# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALICIA W. on behalf of J.L.S., a minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CV-0399-CVE-FHM |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. # 29) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm defendant's decision to deny plaintiff Alicia W.'s claim for disability benefits on behalf of her minor son. Plaintiff has filed an objection to the report and recommendation, and she asks the Court to reverse defendant's decision and remand the case for further proceedings. Dkt. # 30. Defendant has responded (Dkt. # 31) to plaintiff's objection, and the report and recommendation is ripe for review.

## I.

On April 16, 2015, plaintiff filed an application for disability benefits on behalf of her minor son, J.L.S, and her claim was denied initially and upon reconsideration. See Dkt. # 11, at 101, 112, 192. Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held on May 1, 2017. J.L.S. and his mother appeared at the hearing before an ALJ, and they were represented by counsel at the hearing. Id. at 41. J.L.S. was 12 years old at the time of the hearing, and J.L.S's most prominent physical problem was a discrepancy between the length of his legs. Id.

at 45. J.L.S. had previously filed an application for disability benefits that was denied, and his attorney represented that the discrepancy between the length of his legs had significantly increased since his prior application. Id. Counsel acknowledged that J.L.S. had good grades in school and he did not have an individualized educational plan (IEP). Id. at 45-46. J.L.S. was in the sixth grade and had never had to repeat a grade. Id. at 49. His school disciplinary records showed that J.L.S. had been suspended one time the previous year for engaging in a confrontation with another student. Id.

J.L.S. wears orthopedic shoes or heel lifts to help with the leg length discrepancy, but he still walks with an awkward gait. Id. at 52. However, J.L.S. is able to play on a football team even with his leg condition. Id. at 53. J.L.S.' mother testified that J.L.S's teachers have reported that he seems distracted at school, but this is not caused by any hearing or vision impairment. Id. Instead, J.L.S. has a habit of distracting his teachers by talking to them during class, but this has not resulted in any disciplinary action or being sent home from school. Id. at 55. J.L.S. has friends at school and at home, and he plays basketball and video games with his friends. Id. at 56. J.L.S.'s mother testified that J.L.S. is generally able to take care of his personal needs without assistance. Id. at 57.

J.L.S. has heel lifts that help to reduce his limp, but he does not wear the heel lifts every day. Id. at 57-59. J.L.S' reluctance to use his heel lifts was caused in part by discomfort from wearing them, but he often refused to wear the heel lifts because other kids would comment about them. Id. at 58. Even without his heel lifts, J.L.S. is generally able to function and engage in many of the same activities as other children. Id. at 60. J.L.S had surgery on his leg when he was an infant and in July 2015, and J.L.S. would likely have another surgery after he reached the age of 13. Id. at 61-62. Upon examination by plaintiff's counsel, J.L.S testified that he had to take a season off from football following his surgery, but he has not had any problems playing basketball or running. Id. at 64.

The ALJ issued a written decision denying plaintiff's claim for disability benefits on behalf of J.L.S. The ALJ noted that the claimant, J.L.S., had previously filed an application for disability benefits, but the ALJ did not find good cause to reopen the prior application. Id. at 18. The ALJ set out the three step test for determining whether a minor is disabled under Social Security regulations, and he determined that the first two parts of the test were satisfied. Id. at 22. Specifically, J.L.S. had not engaged in any substantial gainful activity since the application date, and J.L.S. had the severe impairments of bone deformity of the left tibia and fibula, status post osteotomy with external fixation, and status post tibua/fibula epiphysiodesis. Id. However, the ALJ did not find that J.L.S. had an impairment or combination of impairments that met the requirements of any of the listings in 20 C.F.R. §§ 416.924, 416.925, or 416.926. The ALJ then considered the six domains listed in 20 C.F.R. § 416.926a to determine if the severity of the limitations imposed by J.L.S' impairments were the functional equivalent of a listing. These domains include acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). J.L.S. would qualify as disabled if he had "marked" limitations in two domains or a "extreme" limitation in any domain. The ALJ found that J.L.S. had a less than marked limitation in moving and manipulating objects but no limitation in any other domain, and he determined that J.L.S was not disabled. Dkt. # 11, at 26-33. Plaintiff asked the Appeals Council to review the ALJ's decision, but the Appeals Council found no basis to review the decision. Id. at 4-6. Plaintiff filed this case seeking judicial review of the denial of her claim for disability benefits on behalf of J.L.S.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Plaintiff argues that the ALJ erred by failing to find a limitation of some kind as to each of the six domains used to evaluate a child's disability, and she claims that the ALJ failed to consider probative evidence tending to show that J.L.S' impairments caused or contributed to his deficiencies in the six domains. Dkt. # 30, at 4-5. Defendant responds that the ALJ's findings are supported by substantial evidence and the ALJ's decision should be affirmed.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th

Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff challenges the ALJ's findings as to each of the six domains used to determine whether J.L.S' impairments cause limitations that functionally equal one of the listed impairments. Dkt. # 30, at 5-11. Defendant responds that the ALJ's findings as to each domain is supported by substantial evidence and the ALJ correctly concluded that J.L.S. was not disabled. Dkt. # 31.

Using and Acquiring Information

The ALJ found that J.L.S. had no limitation in his ability to use and acquire information. Dkt. # 11, at 27. The domain of using and acquiring information focuses on a child's ability to gather information and use that information in his daily life, and this includes information gathered through life experience and in an academic setting. 20 C.F.R. § 416.926a(g). A minor between the ages of 12 and 18 is classified as an adolescent for the purpose of this domain, and adolescents should be able to demonstrate the knowledge they have acquired by means of assignments and classroom discussion. Id. An adolescent should also begin to function independently in daily living situations and begin to apply knowledge in real-world settings. Id.

Plaintiff claims that there was sufficient evidence from which the ALJ should have found at least a marked limitation in this domain. Dkt. # 30, at 5-6. Plaintiff argues that the ALJ ignored evidence that J.L.S. had low standardized test scores in math and science, and J.LS.' school records show that he frequently missed school. Dkt. # 11, at 411, 469, 463. Plaintiff reported that J.L.S. had difficulty concentrating and finishing his work, and he has difficulty learning new skills even with

5

individualized assistance. Id. at 242. Plaintiff also argues that J.L.S. had several poor grades on his report card. Id. at 465-66. Plaintiff also references a teacher questionnaire cited by a state agency reviewer in which a teacher allegedly stated that J.L.S. has trouble focusing and needs "one on one just to get the hang of a new skill." Id. at 107.

The Court has reviewed the administrative record and finds that the ALJ's finding that J.L.S. had no limitation as to using and acquiring information is supported by substantial evidence. The evidence cited by plaintiff shows that J.L.S. had some difficulty focusing in school, but he generally received good grades in school and had not been placed on an IEP. Dkt. # 11, at 49. Plaintiff reported that J.L.S. had difficulty concentrating and he has difficulty learning new skills, but there is no objective evidence suggesting that J.L.S. has a learning disability or that he has a diagnosis for an attention deficit disorder. The teacher questionnaire referenced by plaintiff is not part of the administrative record, and the ALJ had no obligation to discuss this evidence in his written decision. Even if the questionnaire were part of the record, the state agency reviewer's summary of the questionnaire states that J.L.S. is able to learn new skills with assistance and J.L.S. enjoys helping others once he has mastered a skill. Dkt. # 11, at 107. The Court finds no evidence that would support even a marked limitation in the domain of using and acquiring information.

Attending and Completing Tasks

The ALJ found that J.L.S. had no limitation in his ability to complete tasks, and he cited a child function report by plaintiff in which she stated that J.L.S. had no limitation in this domain. Dkt. # 11, at 28. The domain of attending and completing tasks focuses on "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change

them. 20 C.F.R. § 416.926a(h). Adolescents should be able to "pay attention to increasingly longer presentations and discussions, maintain [their] concentration while reading textbooks, and independently plan and complete long range academic projects." Id.

Plaintiff cites a report by a state agency reviewer who identified a marked limitation in this domain, because J.L.S. had serious difficulties sitting still and focusing on tasks. Dkt. # 11, at 107. Plaintiff reported that J.L.S. was unable to finish his school work and had problems understanding his work. Id. at 242. At a mental status examination, plaintiff reported that J.LS. had difficulty paying attention the prior year at school, and he was disorganized and sometimes lost his homework. Id. at 366-67. The Court has reviewed the entire record and finds that the ALJ's determination on this domain is supported by substantial evidence. J.L.S. told the same mental status examiner that he was improving in this regard, and the examiner found that he paid full attention during the interview. Id. The examiner noted some issues with attention and focus, but generally found that J.L.S.'s behavior was age-appropriate and he did not meet the criteria for a diagnosis of an attention deficit disorder. Id. at 368. Plaintiff ignores the child function report that she completed in which she did not identify any limitation in J.L.S.' ability to pay attention and stick to a task. Id. at 210. Plaintiff again relies on the teacher questionnaire that is not part of the administrative record, but the Court does not find that the ALJ erred by failing to discuss evidence that was not part of the administrative record.

Interacting and Relating with Others

The ALJ found that J.L.S had no limitation in interacting and relating with others. Id. at 30. This domain concerns how well a claimant is able to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules,

7

respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Adolescents should be able to initiate friendships with other children and interact appropriately with children and adults. Id. Appropriate behavior includes recognition of social rules applicable in different situations and the ability to express feelings, ask for help, and engage socially in school, work, and home environments. Id.

The ALJ relied a child function report in which plaintiff noted that J.L.S had no limitation in this domain and J.L.S.' own testimony describing his interactions with children his own age. Dkt. # 11, at 30. The ALJ also cited the mental status examination in which the examiner found J.L.S. to be "gregarious and engaged." Id. at 367. Plaintiff claims that the ALJ ignored evidence that she reported that J.L.S did not get along with friends or family members and that he was suspended from school for hitting another child. Id. at 234, 468. Plaintiff also relies on her own testimony in which she explained that J.L.S. would get in trouble at school for talking too much during class. Id. at 55-56. She again relies on the teacher questionnaire that is summarized by the state agency reviewer, and states that the questionnaire explained that J.L.S. was sensitive at being corrected by adults and would pout or argue if he did not feel that he did anything wrong. Id. at 107.

Plaintiff fails to note that state agency reviewer found a less than marked limitation in the domain of interacting with others, and all of ther other evidence cited by plaintiff in her objection is her own self-reporting of J.L.S.' problems interacting with others. Plaintiff testified at the hearing that J.L.S. has friends and plays video games and basketball with his friends after school. Id. at 56. She denied that J.L.S. gets into fights with his friends, and it appears that J.L.S.' suspension for fighting was an isolated incident. Id. at 49, 54. The mental status examination provides no support for plaintiff's argument that J.L.S. has any significant limitation in his ability to interact with others,

8

and the ALJ reasonably relied on a child function report completed by plaintiff in which she noted that J.L.S. has no problems in this area. Id. at 208. The Court finds that substantial evidence supports the ALJ's finding that J.L.S. had no limitation in his ability to interact and relate with others.

Moving About and Manipulating Objects

The ALJ found that J.L.S. had a less than marked limitation in his ability to move about and manipulate objects. Id. at 31. The domain of moving about and manipulating objects focuses on a claimant's gross and fine motor skills, and the ALJ must consider "how you move your body from one place to another and how you move and manipulate things." 20 C.F.R. § 416.926a(j). Adolescents should be able to participate in a wide range of physical fitness activities and should be able to easily get about the community. Id. They should also begin to develop the finer motor skills needed to write efficiently and use a keyboard. Id.

The ALJ found that J.L.S. had a significant impairment to his left leg due the discrepancy in the length of his legs, but he is still able to play football and basketball and ride a bike. Id. at 31. The ALJ specifically rejected plaintiff's testimony that J.L.S. was unable to throw a ball, use scissors, or operate video game controls. Id. Plaintiff argues that the ALJ should have found at least a marked limitation in this domain, because the ALJ found that J.L.S. had a "significant" leg impairment. Dkt. # 30, at 8. The state agency reviewer noted that J.L.S.' teacher reported that he had problems with a sense of his location in space, and he frequently invades other people's personal space. Dkt. # 11, at 107. Plaintiff relies on medical evidence that the disparity in the length of J.L.S.'s legs was increasing as he aged, and J.L.S. complained of hip pain and walked with an unusual gait. Id. at 319-340.

9

Plaintiff's argument concerning the ALJ's review of the medical evidence misses the mark, because the ALJ found that J.LS. had a significant impairment and he did not attempt to minimize the severity of J.L.S.'s condition. Id. at 31. Instead, the focus of this domain is on the claimant's ability to engage in gross and fine motor skills and to otherwise engage in a range of physical activity. Plaintiff focuses on the ALJ's finding that J.L.S. could "throw a ball, use scissors, or work video game controls." However, plaintiff testified that J.L.S. played on a football team and that he plays basketball and video games with his friends. Id. at 53, 56. The ALJ could reasonably credit this testimony, and it supports his specific finding that J.L.S. could throw a ball and play video games. The same medical records that plaintiff uses to show the severity of J.L.S. impairment also support the ALJ's findings concerning movement and manipulations of objects, because J.L.S.' treating physicians describe J.L.S. as a "very active young man" who played sports, even though he walked with an unusual gait. Id. at 330, 338. A "marked" limitation is one that "interferes seriously with your ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(d). The Court finds that the ALJ's decision to find a less than marked limitation in the domain of moving about and manipulating objects was reasonable and supported by substantial evidence.

Caring for Himself

The ALJ found that J.L.S. had no limitation in his ability to care for himself. Dkt. # 11, at 32. This domain generally concerns the emotional and physical health of the claimant, including how the claimant copes with stress and how well he is able to take care of his possessions and home environment. 20 C.F.R. § 416.926a(k). The ALJ relied on a child function report completed by plaintiff stating that J.L.S. had no limitation in this domain. Dkt. # 11, at 32. He also cited the

10

report from the mental status examination and noted that J.L.S. represented that he cleaned his bedroom and bathroom and took out the trash. Id.

Plaintiff argues that the ALJ overlooked evidence that J.L.S. often refuses to wear his heel lift, and she argues that this is similar to a person who refuses to take necessary medication. Dkt. # 30, at 10. She also claims that J.L.S.' leg hurts when he sleeps and he sometimes wets the bed, and this evidence shows that J.L.S. has a marked limitation in his ability to care for himself. Id. The Court finds that the ALJ's determination on this issue is supported by substantial evidence. Plaintiff completed a child function report stating that J.L.S. did not have any limitation in his ability to care for himself. Dkt. # 11, at 209. The types of activities that are relevant to this inquiry include a claimant's ability to dress and clean himself, eat without assistance, clean up his room, and help with chores. Id. J.L.S. told the mental status examiner that he is generally able to care for himself and complete household chores, and there is no evidence in the administrative record that would support a different finding on this issue. Id. at 367. At most, plaintiff states that J.L.S. does not like to do his chores, but there is nothing atypical about an adolescent reluctantly performing household chores. Id. Plaintiff's argument concerning J.L.S.' refusal to wear his heel lift does not undercut the ALJ's finding on this domain, because plaintiff testified that J.L.S. is able to walk well without the lift and the lift causes J.L.S. pain. Id. at 59. There is also no evidence in the record suggesting that lack of sleep contributes to any mental or physical limitations that J.L.S. may have, and the ALJ was not required to discuss these arguments in his written decision.

Health and Physical Well-Being

The ALJ found that J.L.S. had no limitation caused by the cumulative effect of any physical or mental limitations or treatments associated with any impairments. Id. at 33. The domain of

11

physical health and well-being takes into account the cumulative effect of a claimant's physical and mental impairments, including any limitations caused by treatment or therapy for these conditions. 20 C.F.R. § 416.926a(l).

Plaintiff argues that the ALJ minimized the value of evidence tending to show that J.L.S. acts younger than his age, and the ALJ allegedly disregarded a teacher questionnaire suggesting that J.L.S. lacks emotional maturity. Dkt. # 30, at 11. She claims that the ALJ blindly accepted the opinions of the state agency reviewers on this issue without conducting an independent evaluation of the evidence. Id. The ALJ's written decision fully explains the types of difficulties or behaviors exhibited by children that fall within the scope of this domain, and this analysis focuses on how the effects of any impairments, the side effects of medication, and the need for future treatment affects the physical and emotional well-being of the child. Even if the Court were to assume that J.L.S. lacks some emotional maturity, plaintiff cites no evidence that this is caused by or is a side effect of his treatment for the discrepancy in the length of his legs. There is substantial evidence in the record supporting the ALJ's conclusion that J.L.S. is an active and healthy child despite his leg impairment, and the Court rejects plaintiff's argument that the ALJ should have found a marked impairment in this domain.

**B.**

Plaintiff argues that the ALJ's credibility findings are so vague that it is impossible to tell what evidence he relied upon to make his findings. Dkt. # 30, at 12. She claims that the ALJ was obligated to consider the credibility of J.L.S. and his teachers, not just plaintiff's credibility, and the lack of findings on this issue requires the Court to remand the case for further proceedings. Id. at 13. Defendant responds that any inadequacies in the credibility findings do not warrant remand of

12

the case, because J.L.S. could not be found to be disabled even if the ALJ had found that plaintiff's and J.L.S.'s testimony was wholly credible. Dkt. # 31, at 12.

Credibility determinations " are peculiarly the province of the finder of fact" and such determinations will not be upset if the findings are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010). The ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. The key issue is whether the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility" and he does not need to make a formalistic restitution of any particular factors. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012). In the case of a child claimant, the ALJ "must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001).

The Court has reviewed the ALJ's written decision and finds that his credibility determination is supported by substantial evidence. The ALJ provided a thorough summary of plaintiff's and J.L.S' testimony, and he noted that J.L.S. testified that he could engage in wide range of activities that are typical for a child of his age. Dkt. # 11, at 24. He cited the parts of plaintiff's testimony that would be favorable for a finding of disability, but even this testimony did not suggest that J.L.S. had any significant limitations caused by his leg condition that impeded his education or his activities of daily living. Id. The ALJ summarized the medical treatment J.L.S. has received for his leg condition, and found that the evidence was consistent with J.L.S.' testimony that he was active and able to play football and basketball. Id. at 11. The problem with plaintiff's credibility argument is that the ALJ did not substantially reject any aspect of her or J.L.S.' testimony. Instead,

the ALJ correctly summarized the testimony and explained how the testimony did not tend to show that J.L.S. was disabled. Even if the ALJ had found plaintiff to be fully credible, her testimony would not have supported any additional limitations for J.L.S. that were not already considered by the ALJ, and the Court finds that any alleged errors with the ALJ's credibility analysis do not require the Court to remand this case for further proceedings.

C.

The Court finds that the ALJ's conclusions as to each of the six domains relevant to a claim for disability benefits on behalf of a child are supported by substantial evidence, and the ALJ reasonably determined that J.L.S. was not disabled. The Court also rejects plaintiff's challenge to the ALJ's credibility analysis and finds no basis to remand the case for further proceedings on any issue. Therefore, the magistrate judge's report and recommendation is accepted, and defendant's decision to deny plaintiff's claim for disability benefits on behalf of J.L.S. is affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 29) is **accepted** as entered, and decision of the Commissioner of the Social Security Administration is **affirmed**. A separate judgment is entered herewith.

**DATED** this 21st day of February, 2020.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE